# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                                 )
      v.                )      I.D. No. 1905009346
                                 )
ISAAC LOVELL,        )
                                 )
      Defendant.     )

Submitted: December 11, 2019
Decided: December 17, 2019

*Upon Defendant's Motion to Suppress*
**GRANTED**

## MEMORANDUM OPINION

Michael W. Modica, Esquire, Wilmington, Delaware, Attorney for Defendant.

Stephen McDonald, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State of Delaware.

**Rocanelli, J.**

Defendant Isaac Lovell ("Defendant") has moved to suppress all evidence obtained through a search of a residence conducted pursuant to a search warrant. Defendant claims that the warrant was legally invalid and that the search therefore violated Defendant's rights under the Fourth Amendment to the United States Constitution, the Delaware Constitution, and the Delaware Code. The State opposes Defendant's motion.

## FACTUAL BACKGROUND

On December 28, 2018, a special investigator ("Investigator") of the Delaware Department of Justice ("DOJ") obtained a search warrant for a residence at 430 Ranee Loop, Bear, Delaware ("Ranee Loop Residence") in connection with an investigation of Defendant for tax evasion and/or fraud and false statements. The warrant authorized the search of the Ranee Loop Residence for the following property: photographs and/or video images of the Ranee Loop Residence; documents related to business conducted in the name of Defendant, Phire-Fly Contracting ("Phire-Fly"), I Lovell Contracting, or any related entity; financial records that establish income for and are related to Defendant, Phire-Fly, I Lovell Contracting, or any related entity; United States currency; and electronic devices capable of storing/transmitting information.

In support of the warrant, Investigator attached an affidavit of probable cause which set forth the following facts regarding the State's investigation:

1

- In September 2016, WSFS Bank informed the DOJ of suspected financial exploitation of a WSFS Bank customer ("Alleged Victim"). Alleged Victim had written several checks payable to Defendant and Phire-Fly. The checks were endorsed by "I Lovell" and reflected the endorser's Delaware driver's license number ("DDL") and street address, which was 509 Caledonia Way, Bear, Delaware ("Caledonia Way Address").

- A query of the DDL revealed that the DDL was assigned to Defendant at the Caledonia Way Address. Further investigation revealed that Elizabeth Riley Lovell ("Elizabeth") was Defendant's spouse and also identified the Caledonia Way Address as her residence.

- In March 2017, Investigator observed a red truck bearing advertisements for Phire-Fly traveling on Interstate 95. Investigator later learned that the truck was registered to Defendant at the Caledonia Way Address.

- Months later, Investigator learned that a utility service connection had been established in Elizabeth's name at the Ranee Loop Residence.

- Investigator surveilled the Ranee Loop Residence on two occasions. On both occasions, Investigator observed Defendant's Phire-Fly truck parked in the driveway.

The affidavit of probable cause also sets forth the following information regarding Defendant's businesses and tax returns:

- In 2015, Defendant applied for a license to conduct business as a contractor as Phire-Fly. The application indicated that Defendant began operating Phire-Fly in Delaware in 2015.

- Alleged Victim paid Defendant and/or Phire-Fly over $575,000 from January 2015 to December 2017.

- Defendant's 2015 tax returns indicate that Defendant's business, I Lovell Contracting, claimed $125,000 in gross receipts.

- Defendant did not file tax returns for the 2016 or 2017 tax years. Alleged Victim's payments to Defendant during 2016 and 2017 exceeded the amounts required to file tax returns for the 2016 and 2017 tax years.

- United States tax law requires retention of tax records and documents for a minimum of three years and longer if a person files either a fraudulent return or no return at all.

Finally, the affidavit of probable cause includes the following statements regarding Investigator's knowledge, training, and experience:

Affiant knows, through training and experience, that persons who commit fraud-related crimes may maintain documents germane to the crime. These records may be stored on the person, in the person's residence, the person's office, or in the person's vehicles.

. . .

Affiant knows, through training and experience, that persons who conduct business may keep United States Currency on their person, in their home, or in their vehicle(s).

. . .

Affiant knows, through training and experience, that persons who conduct business commonly utilize electronic devices to: communicate via email/text messages/telephone calls with customers/co-workers/sub-contractors/suppliers, etc.; store/maintain records related to their business; take photographs related to their business.

## **LEGAL STANDARD**

A defendant moving to suppress evidence bears the burden of establishing that the challenged search or seizure violated the defendant's rights under the United

3

States Constitution, the Delaware Constitution, or the Delaware Code.[1]  "[O]nce the defendant has established a basis for [the] motion, the burden shifts to the government to show that the search or seizure was reasonable."[2]  The defendant nevertheless bears the ultimate burden of proving entitlement to relief by a preponderance of the evidence.[3]

## **DISCUSSION**

The Delaware Constitution protects against unreasonable searches and seizures and provides that no search warrant may issue "unless there be probable cause supported by oath or affirmation."[4]  In furtherance of the Delaware Constitution's probable cause provision, the General Assembly promulgated specific requirements for warrant applications in Section 2306 of Title 11 of the Delaware Code.[5]  Specifically, Section 2306 provides:

> The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation.  It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the

---

[1] *State v. Cannon*, 2007 WL 1849022, at *2 (Del. Super. June 27, 2007).
[2] *State v. Babb*, 2012 WL 2152080, at *2 (Del. Super. June 13, 2012).
[3] *See id.*; *Cannon*, 2007 WL 1849022, at *2; *State v. Jones*, 1997 WL 528274, at *3 (Del. Super. Aug. 1, 1997).
[4] Del. Const. art. I, § 6.
[5] *See Dorsey v. State*, 761 A.2d 807, 810 (Del. 2000) (explaining that the General Assembly promulgates Section 2306 in furtherance of the Delaware Constitution's probable cause provision).

4

complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.[6]

In addition, Section 2307 prescribes procedural and substantive requirements to which a judicial officer authorizing a warrant must adhere:

If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible.[7]

Delaware courts have found that these constitutional and statutory provisions establish a four-corners test for probable cause.[8] In other words, for a search warrant to issue, the four corners of the warrant application "must present adequate facts to allow a reasonable person to conclude that an offense has been committed and that seizable property would be found in a particular place or on a particular person."[9] The reviewing court's task in evaluating a warrant's validity is to determine whether

---

[6] 11 *Del. C.* § 2306.

[7] *Id.* § 2307.

[8] *See Buckham v. State*, 185 A.3d 1, 16 (Del. 2018); *Dorsey*, 761 A.2d at 811–12; *Cannon*, 2007 WL 1849022, at *3.

[9] *Cannon*, 2007 WL 1849022, at *3; *see also Dorsey*, 761 A.2d at 811–12 ("[T]he information set forth within the affidavit's four corners, and any logical inference from the specific facts alleged, must demonstrate why it is objectively reasonable for the police to expect to find the items sought in those locations.").

the warrant application provided the issuing judicial officer with a "substantial basis" to conclude that probable cause existed.[10]

## I. The Warrant Was Not Based on a Logical Nexus Between the Items Sought and the Location Searched

Defendant argues that the facts set forth in the warrant application do not establish a logical nexus between the items sought and the Ranee Loop Residence. While probable cause is the touchstone of both arrests and searches, probable cause to arrest is alone insufficient to conduct a search.[11] An arrest warrant is directed at a particular *person* and requires police to establish probable cause "that the defendant has committed a crime."[12] A search warrant, on the other hand, is directed at a particular *place* where police have probable cause to believe that evidence of a crime is located.[13] "For a search warrant to issue, there must be more than just probable cause that a crime has been committed; there must also be, 'within the four corners of the affidavit, facts adequate for a judicial officer to form a reasonable

---

[10] *See, e.g.*, *Buckham*, 185 A.3d at 16; *Cannon*, 2007 WL 1849022, at *3.

[11] *See Dorsey*, 761 A.2d at 812–13 ("Probable cause to search and probable cause to arrest are not fungible legal concepts, and each involves a distinctly separate inquiry."); *Cannon*, 2007 WL 1849022, at *4 ("[P]robable cause to believe that a suspect has committed a crime will support an arrest, but not necessarily a search warrant for the suspect's home.").

[12] *State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993); *see also Dorsey*, 761 A.2d at 812 ("The focus of probable cause to arrest is upon a 'person', i.e., whether a criminal offense has been or is being committed by the person to be arrested.").

[13] *See Dorsey*, 761 A.2d at 812 ("The focus of probable cause to search is upon a 'place', i.e., whether contraband or evidence will be found in a particular location.");

belief that the property to be seized will be found in a *particular* place.'"[14]  Delaware courts have found that this four-corners inquiry requires "a *logical* nexus between the items sought and the place to be searched."[15]  The nexus need not be based on direct observations or specific facts placing the items at the location but may be inferred from the circumstances.[16]  The ultimate question that Delaware courts must answer is "whether, based upon the specific facts alleged within the four corners of the affidavit, one would *normally* expect to find . . . items [sought] at [the] place" searched.[17]

The facts set forth in the warrant application do not establish a sufficient logical nexus between the items sought and the Ranee Loop Residence.  The only links between Defendant and the Ranee Loop Residence set forth in the four corners of the warrant application are:  (1) Defendant's wife established a utility service connection at that address; and (2) Investigator observed Defendant's truck parked in the driveway on two occasions.  On the other hand, the warrant application sets

---

[14] *Buckham*, 185 A.3d at 16 (quoting *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006)) (alterations omitted) (emphasis added).
[15] *Dorsey*, 761 A.2d at 811; *see also, e.g.*, *Buckham*, 185 A.3d at 16 ("The constitutional requirement that there be a nexus between the crime and the place to be searched is also enshrined in Delaware law . . . ."); *Jones*, 1997 WL 528274, at *4 ("Intrinsic in the scheme set forth above is that there must be a nexus between the items which are sought and the place in which the police wish to search for them.").
[16] *Morgan v. State*, 962 A.2d 248, 253 (Del. 2008) (quoting *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir.1999)).
[17] *Dorsey*, 761 A.2d at 813.

forth several links between Defendant and the Caledonia Way Address. That Defendant's wife set up utility service and that Defendant's Phire-Fly truck was observed on two occasions is not sufficient to establish the Ranee Loop Residence as Defendant's residence such that probable cause could be established to support a search for the items sought.

Moreover, while courts may consider an officer's training and experience in determining probable cause,[18] the statements regarding Investigator's knowledge, training, and experience do not rescue the warrant from its other deficiencies. While it may be reasonable to conclude that a person who has committed fraud-related crimes may have documents, currency, or other items in the person's residence, the warrant application does not set forth sufficient facts establishing that Defendant actually resided at the Ranee Loop Residence. The four-corners test requires a "logical nexus."[19] The warrant does not set forth a reasonable probability that evidence of Defendant's alleged offenses might be located at the Ranee Loop Residence because the warrant does not set forth sufficient facts to support a finding that Defendant resided at the Ranee Loop Residence.

---

[18] *See State v. Jones*, 2000 WL 33114361, at *4 (Del. Super. Dec. 5, 2000) ("[A] police officer's training and experience may be taken into consideration in determining probable cause when combined with other facts.").
[19] *See Dorsey*, 761 A.2d at 811.

Accordingly, the warrant application fails to establish a logical nexus between evidence of Defendant's alleged offenses and the place searched for that evidence. There was no substantial basis to conclude that probable cause to execute a search of the Ranee Loop Residence existed. The search therefore violated Defendant's rights under the Delaware Constitution's search and seizure provisions.

## II.     The Evidence Seized During the Search Must Be Suppressed

Exclusion of evidence seized is the remedy for violations of the search and seizure protections set forth in the Delaware Constitution.[20] The Delaware Constitution leaves no room for exceptions to the probable cause requirement;[21] therefore, it is the duty of Delaware courts to strictly apply the exclusionary rule when violations of that requirement occur.[22] The search of the Ranee Loop Residence was conducted pursuant to a warrant that was not based on probable cause. Accordingly, the evidence seized during the search of Defendant's residence must be suppressed.[23]

---

[20] *Dorsey*, 761 A.2d at 814–21.

[21] *See State v. Henderson*, 906 A.2d 232, 244 (Del. Super. 2005) ("[T]here [is] no room in the Delaware Constitution for an exception to the requirement of probable cause to obtain a search warrant.").

[22] *See Rickards v. State*, 77 A.2d 199, 205 (Del. 1950) ("We conceive it the duty of the courts to protect constitutional guarantees. The most effective way to protect the guarantees against unreasonable search and seizure and compulsory self-incrimination is to exclude from evidence any matter obtained by a violation of them.").

[23] While the warrant does not state whether the Ranee Loop Residence was Defendant's home, the State does not contest Defendant's standing to challenge the

## CONCLUSION

Standing alone, probable cause adequate to support an arrest is constitutionally insufficient to justify a search of a person's home. The warrant application did not provide facts demonstrating a logical nexus between the items sought and the location searched and was therefore not based on probable cause. The search and seizure of property at the Ranee Loop Residence violated Defendant's rights under the Delaware Constitution. Accordingly, Defendant's motion to suppress is hereby GRANTED and evidence seized from the Ranee Loop Residence is hereby suppressed.

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*
**The Honorable Andrea L. Rocanelli**

---

legality of the search. Moreover, to establish standing, Defendant concedes in his motion that he resided at the Ranee Loop Residence at the time of the search. Defendant's concession does not impact the Court's analysis, however, because the Court's inquiry is limited to the four corners of the warrant application. *See, e.g.*, *Buckham*, 185 A.3d at 16 ("For a search warrant to issue, there must be more than just probable cause that a crime has been committed; there must also be, 'within the four corners of the affidavit, facts adequate for a judicial officer to form a reasonable belief that the property to be seized will be found in a particular place.'" (quoting *Sisson*, 903 A.2d at 296) (alterations omitted)).

10